IN RE: Michael David PARIS, Debtor.

Case No.: 1:12–bk–11446–MB

United States Bankruptcy Court, C.D. California, San Fernando Valley Division.

Signed June 9, 2017

Paul D. Spear, Spear Law Firm, Tarzana, CA, for Debtor.

Jeffrey S. Kwong, Levene Neale Bender Yoo & Brill LLP, Juliet Y. Oh, Edward M. Wolkowitz, Levene Neale Bender Rankin & Brill LLP, Los Angeles, CA, for Trustee.

### ORDER AND STATEMENT OF DECISION:

**[1] DENYING FINAL APPLICATION FOR COMPENSATION FOR LEGAL SERVICES RENDERED BY SPECIAL LITIGATION COUNSEL, BRADLEY H. SPEAR; AND**

**[2] REQUIRING BRADLEY H. SPEAR TO DISGORGE SUMS PREVIOUSLY RECEIVED**

Martin R. Barash, United States Bankruptcy Judge

Bradley H. Spear ("Spear"), former contingency counsel to the chapter 7 trustee, contends that he is entitled to, as compensation for services rendered to the trustee, a portion of a litigation settlement negotiated by the trustee after Spear stipulated to his own suspension from law practice by the California State Bar, and was replaced with substitute counsel by the trustee. Notwithstanding his suspension from practice, Spear contends that under California law he holds an attorneys' lien against the settlement proceeds and is entitled to be compensated from those funds. Spear's request is opposed by the chapter 7 trustee, the Office of the United States Trustee, and the contingency counsel that replaced him after his suspension.

The Court concludes below that Spear's stipulated suspension was not the sort of "justifiable cause" under California law

that would permit a contingency attorney law to cease representation of a client but nevertheless preserve his lien in and entitlement to a share of any future recovery. Spear was not compelled to withdraw as counsel to the trustee because of any legal or ethical imperative arising from his representation of the trustee. Instead, Spear's inability to continue representing the trustee was the result of his own voluntary acts. As such, Spear forfeited his attorney's lien and any entitlement to a share of the litigation settlement.

The Court also concludes that Spear should be denied compensation and required to disgorge all amounts he previously received pursuant *In re Park–Helena Corp.*, 63 F.3d 877, 880 (9th Cir. 1995). Spear violated his obligations under Bankruptcy Code section 329 and Federal Rule of Bankruptcy Procedure 2014 by not disclosing his asserted attorneys' lien in his application to be employed by the chapter 7 trustee. To the contrary, Spear affirmatively represented in his application that he did not hold and would not assert a lien in any recovery to be realized by the trustee. The Court concludes that the appropriate sanction for this failure to disclose (and misrepresentation) is the denial of all compensation and disgorgement of all amounts previously paid to Spear.

## I. PROCEDURAL BACKGROUND

On November 8, 2016, Spear filed his *Final Application for Compensation for Legal Services Rendered by Special Litigation Counsel for Chapter 7 Trustee Nancy Zamora* (the "Fee Application"). Case Dkt. 191. The Court has considered the Fee Application as well as the *Chapter 7 Trustee's Objection to Final Application for Compensation for Legal Services Rendered by Special Litigation Counsel for Chapter 7 Trustee Nancy Zamora* (Case Dkt. 202), the *Limited Opposition to Ap-*

*plication for Compensation for Legal Services by Special Litigation Counsel Bradley H. Spear* (Case Dkt. 199) filed by Knapp, Petersen & Clarke ("KPC"), and Spear's reply papers in support of his Fee Application (Case Dkt. 210).

Following the arguments of the parties, as well as the Office of the United States Trustee, at a hearing on March 8, 2017, the Court required supplemental briefing on the issue of whether, based on *In re Park–Helena Corp.*, 63 F.3d 877 (9th Cir. 1995), the Court should disapprove, and require disgorgement, of all of Spear's fees. The Court has considered all of the supplemental briefs of the parties as well as the arguments at the continued hearing on April 17, 2017. Case Dkt. 249, 253, 254, 255. Based on the foregoing, the Fee Application is ripe for decision. This Order and Statement of Decision constitutes the Court's findings of fact and conclusions of law for purposes of Federal Rules of Bankruptcy Procedure 7052 and 9014.

## II. FACTUAL BACKGROUND

On or about February 4, 2011, and prior to the filing of this bankruptcy case, the Debtor and Spear entered into a retainer agreement (the "Retainer Agreement") by which Bradley Spear agreed to "prosecute a lawsuit . . . on client's behalf relative to the injury incident which occurred on October 28, 2010 . . ." Fee Application, Exh. D. The Retainer Agreement did not expressly grant Spear a lien on any recovery from the lawsuit and did not use the word "lien" anywhere in the agreement. It did, however, state that as "[a]s Attorney's fee for representing Client in the Case, Client agrees to pay Attorney . . . 40% of any gross recovery received from the Case through settlement or verdict in Client's favor after the filing of the lawsuit on client's behalf." *Id.*

Before Spear filed the personal injury action contemplated by the Retainer Agreement, the Debtor filed a voluntary chapter 7 petition on February 15, 2012 (the "Petition Date"). Despite being represented by bankruptcy counsel, the Debtor failed to list his claims for relief based on the 2010 "injury incident" and did not list any "contingent and unliquidated claims" of any nature on his bankruptcy schedules. The chapter 7 trustee appointed in the case (the "Former Trustee") filed her no-asset report on March 22, 2012. The Debtor received his discharge on May 29, 2012, and the bankruptcy case was closed shortly thereafter.

On September 25, 2012, Spear filed a personal injury lawsuit on behalf of the Debtor in state court, naming Louisville Ladder, Inc. ("Louisville") and various other parties as defendants (the "PI Action"). On or about April 30, 2014, the Debtor and Spear executed a settlement agreement with Louisville by which Louisville agreed to pay the Debtor $29,900 (the "Louisville Settlement"). Case Dkt. 92, Exh. 1.

In July of 2014, the Debtor, now represented by Paul Spear, the brother of Bradley Spear, successfully moved to reopen this bankruptcy case and the Former Trustee was reappointed. Thereafter, the Former Trustee resigned and Nancy J. Zamora was appointed as the chapter 7 trustee (the "Trustee") in this case.

On November 20, 2014, the Trustee moved to employ Spear as her special litigation counsel pursuant to Bankruptcy Code sections 327(e) and 328 to represent her in the PI Action on a contingency basis (the "Spear Employment Application"). Case Dkt. 87. In his declaration in support of that application, Spear declared under penalty of perjury that:

Louisville Ladder subsequently tendered the Settlement Amount to the Spear Firm on behalf of the Debtor, which was deposited into my firm's client trust account. The Spear Law Firm applied its 40% contingency fee ($11,960) and reimbursed itself for costs advanced for the litigation ($11,152). There is currently $6,788 left of the Settlement Amount in my firm's client trust account.... The Trustee intends to seek Bankruptcy Court approval for the Louisville Ladder settlement. Spear understands that to the extent the settlement is not approved this Court may require disgorgement of any sums paid to Spear.

Case Dkt. 87, at 10:7–11:6. Spear also declared under penalty of perjury:

**The Spear Law Firm has not received a retainer nor will it receive a lien in property of the Debtor with respect to its representation.** Notwithstanding the Retainer Agreement, I understand and have agreed that compensation for my services shall be such sums as may be allowed under the Bankruptcy Code, in accordance with law, the parties' contingency agreement, the time spent and services rendered, the results achieved, the difficulties encountered, the complexities involved, and other appropriate factors.

*Id.* at 11:14–21 (emphasis added).

The Court entered an order approving the Spear Employment Application on December 8, 2014. On June 3, 2015, the Court granted the Trustee's motion to approve the Louisville Settlement and approved the distribution of $23,112 in settlement funds to Spear.

In 2013 and 2014, the California State Bar filed conviction proceedings against Spear, pursuant to sections 6101 and 6102 of the Business and Professions Code, following three criminal convictions. On or about June 19, 2015, Spear and the California State Bar entered into a stipulation

providing for, among other things, his two-year suspension from the practice of law, effective as of November 25, 2015, in exchange for the California State Bar dismissing the charges against him. Case Dkt. 202, Exh. 2. On or about December 23, 2015, Spear notified the Trustee of his suspension. Case Dkt. 202, Exh. 3.

On January 15, 2016, the Trustee moved to employ Knapp, Petersen & Clarke, A.P.C. ("KPC") as special litigation counsel to succeed Spear to represent her in the PI Action. Her application was approved by the Court on February 9, 2016. Later that year, the Trustee settled the PI Action with the remaining defendants paying a settlement amount of $925,000 (the "Settlement Amount"). On September 14, 2016, the Trustee filed her *Motion for Order: (1) Approving Compromise of Controversy; and (2) Establishing a Procedure for the Determination of Fees Owed to Former Special Counsel* (the "Trustee's Settlement Motion").

Spear objected to the Trustee's Settlement Motion to the extent the Trustee suggested that Spear might be disqualified from an award of any fees due to the suspension of his law license. Case Dkt. at 181. Specifically, Spear objected to the Trustee's statement that Spear was "forced to withdraw" due to the suspension of his bar license, arguing that he "never withdrew from [his] representation of the Trustee." Case Dkt 181 at 9:2. Ultimately, the Court approved the final settlement on October 21, 2016, reserving all issues regarding Spear's compensation for consideration in the context of his Fee Application.

On November 8, 2016, Spear filed his Fee Application seeking allowance and payment of $296,040 in fees, in addition to the $11,960 in fees and $11,152 in costs previously awarded to him in connection with the Louisville settlement. In the Fee Application, Spear (for the first time) asserted that he "maintains a lien on the state court case as a result of his retainer agreement." Case Dkt. 191 at 12:1–2.

## III. LEGAL ANALYSIS

### A. Spear Had a Prepetition Equitable Lien on any Recovery in the PI Action.

■ Because the Retainer Agreement stated that Debtor agreed to pay Spear "40% of any gross recovery received from the Case," the agreement created an equitable lien in favor of Spear on Debtor's recovery from the PI Action. *Waltrip v. Kimberlin*, 164 Cal.App.4th 517, 525, 79 Cal.Rptr.3d 460 (2008) ("In California, a lien in favor of an attorney upon the proceeds of a prospective judgment may either be created by express contract or implied from a retainer agreement that indicates the attorney is to look to the judgment for payment of his fee").

### B. Spear's Effective Withdrawal from Representation of the Trustee Was Permissive and Without Justifiable Cause.

■ Outside of bankruptcy, the "rules on recovery after a separation between client and attorney in a contingency fee case depend on exactly who wanted out of the relationship and why. The simpler scenario is when the client unilaterally discharges the attorney." *Rus, Miliband & Smith v. Conkle & Olesten*, 113 Cal. App.4th 656, 671, 6 Cal.Rptr.3d 612 (2003). Here, the Trustee did not discharge Spear. Instead, Spear effectively withdrew from the representation by stipulating to the suspension of his bar license.

■ If the client does not discharge the attorney, the issue is whether the attorney left the representation with "justifiable cause so as to permit a recovery of

compensation." *Rus, Miliband*, 113 Cal. App.4th at 672, 6 Cal.Rptr.3d 612 citing *Estate of Falco v. Decker*, 188 Cal.App.3d 1004, 1016, 233 Cal.Rptr. 807 (1987). If justifiable cause exists, the attorney's recovery is governed by quantum meruit rather than the original contingency terms. *Duchrow v. Forrest*, 215 Cal.App.4th 1359, 1382, 156 Cal.Rptr.3d 194 (2013). If the withdrawing attorney fails to establish justifiable cause for his withdrawal, his fee recovery must be barred and he will not retain a lien against the recovery that the client may subsequently obtain. *Hensel v. Cohen*, 155 Cal.App.3d 563, 564, 202 Cal. Rptr. 85 (1984) ("we affirm the trial court's holding that the firm ... holds no lien against any recovery which ... their former client, may subsequently obtain in his pending personal injury case"). This is due to "the inequity of allowing lawyers to capitalize on their own voluntary actions in leaving clients lawyerless." *Rus, Miliband*, 113 Cal.App.4th at 675, 6 Cal.Rptr.3d 612.

■ An attorney's right to withdraw as counsel from a case "is a 'different question' than an attorney's right to withdraw and then later recover." *Rus, Miliband*, 113 Cal.App.4th at 673, 6 Cal.Rptr.3d 612. While Rule of Professional Conduct 3–700 addresses when an attorney may withdraw (and when an attorney *must* withdraw) from the representation of his client, satisfaction of this rule does not equate with a right to recover fees from a later-obtained settlement or judgment. The right to recover after withdrawal "is a different matter, and one on which the law takes a more rigorous approach." *Id.*

■ Justifiable cause, such that the attorney may retain his lien and recover in quantum meruit after withdrawal, may be shown where the attorney's withdrawal was mandatory. The withdrawing attorney has the burden of proof to establish all of the following:

(1) counsel's withdrawal was mandatory, not merely permissive, under statute or state bar rules; (2) the overwhelming and primary motivation for counsel's withdrawal was the obligation to adhere to these ethical imperatives under statute or state bar rules; (3) counsel commenced the action in good faith; (4) subsequent to counsel's withdrawal, the client obtained recovery; and (5) counsel has demonstrated that his work contributed in some measurable degree towards the client's ultimate recovery.

*Falco*, 188 Cal.App.3d at 1016, 233 Cal. Rptr. 807.

■ Where the attorney's withdrawal was not mandatory and was merely permissive, the reasons for the withdrawal are subject to "heightened scrutiny." *Falco*, 188 Cal.App.3d at 1016, n. 12, 233 Cal. Rptr. 807 (finding no justifiable cause where attorney withdrew based on client's failure to cooperate, mutual animosity between the attorney and client and a complete breakdown of the attorney-client relationship). In reviewing the policy reasons underlying this approach, the *Rus, Miliband* court noted:

To allow an attorney under a contingency fee agreement to withdraw without compulsion and still seek fees from any future recovery is to shift the time, effort and risk of obtaining the recovery (economists would refer to these things as the 'costs' of obtaining recovery) from the attorney, who originally agreed to bear those particular costs in the first place, to the client. The withdrawing attorney gets a free ride as to many of the headaches of litigation which he or she otherwise would have had to endure: answering the client's phone calls, showing up for depositions, responding to discovery, fending off summary judgment motions, preparing for trial, fending off in limine motions, picking a jury,

fending off motions for nonsuit, judgment notwithstanding the verdict and new trial if he or she does win, and then, at the end of it all, protecting the fruits of victory by responding to an appeal. It is a very tough row which a contingency fee attorney originally agrees to hoe. Thus it is unassailably unfair to allow him or her to escape that labor absent the most compelling of permissive reasons-reasons that, as *Falco* indicated, must pass heightened scrutiny.

*Rus, Miliband,* 113 Cal.App.4th at 675–76, 6 Cal.Rptr.3d 612.

■ Spear was not required to withdraw from his representation of the Trustee due to the Trustee's misconduct. Nothing the Trustee did, requested, or failed to do created an ethical dilemma mandating Spear's withdrawal. Instead, it was his own voluntary conduct that resulted in the State Bar filing charges against him. Spear voluntarily decided to stipulate to the suspension of his bar license in exchange for the dismissal of the State Bar's three complaints against him. By agreeing to a two-year suspension, he avoided the costs, risks and uncertainty of a state bar court trial, including the possibility of a more strict punishment. The dismissal of the complaints against him appears to be the "overwhelming and primary motivation" that led to his withdrawal as counsel for the Trustee. Thus, Spear fails to satisfy at least two of the five *Falco* requirements. Spear has not met his burden to show that his withdrawal was mandatory and based on justifiable cause.

Nor has Spear satisfied the heightened scrutiny applicable following a permissive withdrawal. The *Rus, Miliband* court opined that, "absent the most compelling of permissive reasons" it was "unassailably unfair to allow" contingency counsel to withdraw permissively and still recover fees from a future recovery because doing so gives the withdrawing attorney a "free ride" and shifts the risk and costs of litigation entirely onto the client. *Rus, Miliband,* 113 Cal.App.4th at 675–76, 6 Cal. Rptr.3d 612. In such situations, fees are barred due to the "inequity of allowing lawyers to capitalize on their own voluntary actions in leaving clients lawyerless." *Id.* at 675, 6 Cal.Rptr.3d 612.

Here, the Trustee is more than justified in expecting her counsel to maintain his license to practice law throughout the representation; doing so is an irreducible minimum of the attorney's obligation to his client. Spears' decision to stipulate to the suspension of his license left the Trustee without counsel and caused the estate to incur substantial administrative fees to employ KPC and to defend against Spears' demands for recovery from a pool of funds produced by KPC's labor rather than his own. Under these circumstances, Spears' permissive withdrawal cannot withstand the heightened scrutiny required under *Rus, Miliband* and *Falco*.

Because Spear fails to establish justifiable cause for his withdrawal, his demand for fees is barred under California law and he no longer holds a lien against or any other right to a share of the Settlement Amount or the Louisville Settlement. *Hensel,* 155 Cal.App.3d at 564, 202 Cal.Rptr. 85.

**C. Spear Forfeited the Right to Compensation From The Estate When He Violated His Obligations Under Federal Rule of Bankruptcy Procedure 2014(a).**

■ Notwithstanding the foregoing, because Spear was employed by the Trustee to act on behalf of the estate, his right to compensation is governed by the Bankruptcy Code and Rules. "Compensation to professionals acting on behalf of the estate must be based on provisions of the Code.

The Code does not provide for fee awards based on state law theories such as quantum meruit." *In re Weibel, Inc.*, 176 B.R. 209, 212 (9th Cir. B.A.P. 1994).

To facilitate the court's policing responsibilities, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure impose several disclosure requirements on attorneys who seek to represent a debtor and who seek to recover fees. *See*, 11 U.S.C. § 329; Fed. R. Bankr. P. 2014 & 2016. The disclosure rules impose upon attorneys an independent responsibility. Thus, failure to comply with the disclosure rules is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule."

*In re Park–Helena Corp.*, 63 F.3d 877, 880 (9th Cir. 1995).

By its express terms, Rule 2014(a) applies to all employment applications under Bankruptcy Code section 327 and requires an attorney's application for employment to disclose "all of the [applicant's] connections with the debtor, creditors, [or] any other party in interest...." Fed.R.Bankr.P. 2014(a). "If a professional holds a secured interest in assets of the estate, that security interest must be disclosed." *In re Dick Cepek, Inc.*, 339 B.R. 730, 741 (9th Cir. B.A.P. 2006). Because Spear was employed under Bankruptcy Code section 327(e), he was required to disclose his asserted lien in any potential recovery in the PI Action.

The disclosure requirements are strictly applied and fee arrangements must be described with precision. *Park Helena*, 63 F.3d at 881. An attorney's failure to disclose will not be excused, even if (i) it was not apparent to the attorney that the information was relevant, (ii) a potential conflict was not apparent, or (iii) the attorney deemed the information to be

trivial. *Park–Helena*, 63 F.3d at 882, citing *In re Haldeman Pipe & Supply Co.*, 417 F.2d 1302, 1304 (9th Cir.1969). The failure to disclose relevant information, even if negligent or inadvertent, "may result in a denial of all requested fees." *Park–Helena*, 63 F.3d at 882 ("The bankruptcy court in this case concluded that Neben & Starrett's failure to disclose fully the circumstances surrounding payment of the retainer was not negligent or inadvertent, but willful. This finding is not clearly erroneous. There can be no doubt that the firm did know all of the salient facts regarding the payment of the retainer but chose not to reveal them.... The court's denial of all fees was within its discretion").

Similarly, because a "bankruptcy court must be able to rely on the veracity of the representations made by an attorney in an application for employment," when an attorney makes false statements in his application for employment, the bankruptcy court has discretion over whether to permit the attorney to receive any fees at all and whether to order the attorney to disgorge fees already received. *In re Lewis*, 113 F.3d 1040, 1044–46 (9th Cir. 1997).

Rule 2014(a) of the Federal Rules of Bankruptcy Procedure required Spear to disclose his lien in any future recovery in the PI Action and required such disclosures to be full, candid and complete. Not only did Spear fail to disclose that he asserts a lien on any recovery in the PI Action, Spear declared under penalty of perjury that he had **would not receive a lien** in "property of the Debtor with respect to its representation." Case Dkt. 87 at Spear's statement was false. Like the counsel in *Park–Helena*, Spear knew all of the salient facts regarding the Retainer Agreement and his lien and, like that counsel, his decision to misrepresent that he

had no lien was willful. Even if Spear had not subsequently forfeited his lien and right to recovery under California law, by stipulating to his own suspension, his false statements disavowing the existence of any lien violated Rule 2014(a). By failing to disclose the truth in accordance with Rule 2014(a), Spear forfeited any entitlement he may have had to receive compensation from this bankruptcy estate. As such, Spear is not entitled to a share of the Settlement Amount, and will be required to disgorge and turnover to the Trustee the $23,112 already paid to him from the Louisville Settlement.

### D. Spear Is Bound by his Prior Admission That He No Longer Holds A Lien against Property of the Estate.

■ As an alternative basis for concluding that Spear does not hold a lien against property of this estate, the Court concludes that Spear is bound by the declaration that he made at the time he applied to this Court for employment. Spear's employment declaration stated under penalty of perjury that he would not receive a lien in the cause of action or its proceeds. Case Dkt. 87 at 11:14–21. This is directly at odds with his contention in the Fee Application that he "maintains a lien on the state court case as a result of his retainer agreement." Case Dkt. 191 at 12:1–2. The Court finds that it is appropriate to bind Spear to his prior statement, which constitutes a judicial admission.

■ The Ninth Circuit has held that, at the discretion of the court, statements of fact made in a brief filed in the same case may be considered judicial admissions binding on the party who made them. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988). Similarly, declarations under penalty of perjury can constitute judicial admissions.

*Naylor v. Flavan*, 2009 WL 1468708, at *5 (C.D. Cal., May 19, 2009); *In re Shalan Enter., LLC*, 2012 WL 1345328, at *9 (Bankr. C.D. Cal., Apr. 17, 2012). Judicial admissions are conclusively binding on the party who made them. *Am. Title Ins.*, 861 F.2d at 226.

Under the circumstances presented, the Court finds it appropriate to treat Spear's declaration under penalty of perjury in support of the Spear Employment Application as a judicial admission. In determining whether and on what terms to approve an employment application, the Court relied on the declaration testimony offered in support of the application. The declaration testimony of Spear that he would not "receive a lien in property of the Debtor with respect to its representation" was material to the Court's decision and it would be fundamentally unjust to permit Spear to alter his position at this time. Accordingly, Spear is conclusively bound by his declaration and cannot now assert that he is entitled to the benefit of a lien in the Settlement Amount or the Louisville Settlement.

Based on the foregoing, **IT IS HEREBY ORDERED THAT:**

A. Bradley H. Spear's Fee Application is DENIED.

B. Bradley H. Spear and the Law Offices of Bradley H. Spear shall disgorge and turnover to Nancy J. Zamora, chapter 7 trustee, the sum of $23,112 within 60 days of the entry of this Order.

C. The Trustee shall serve this order on Bradley H. Spear within five days of entry of this Order and file a Declaration of Service.